IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JASON WILLARD BRAMLETT                                                            PLAINTIFF

v.                                      Civil No. 6:19-CV-06070

WELLPATH, LLC (formerly known as                                              DEFENDANTS
Correct Care Solutions, LLC);
DR. THOMAS DANIEL; and,
DR. JEFFREY STIEVE
(Regional Director for Wellpath, LLC)

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Hon. Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Partial Motion to Dismiss (ECF No. 10), Plaintiff's Motions to Stay Tolling Provisions of Ark. Code Ann. § 16-114-201 (ECF Nos. 20, 24), Plaintiff's Motion for Order (ECF No. 25), and Plaintiff's Motion for Expedited Ruling (ECF No. 27).

### I. BACKGROUND

Plaintiff filed his Complaint on June 25, 2019. (ECF No. 1). He alleges his constitutional rights were violated by the denial of medical care starting in March 2017 while incarcerated in the Arkansas Department of Correction ("ADC"). (ECF No. 1 at 4). Plaintiff states he suffers from Multiple Sclerosis[1] ("MS"), and has additional spinal column issues including disc protrusions and

---

[1] "Multiple sclerosis (MS) is characterized by disseminated patches of demyelination in the brain and spinal cord. Common symptoms include visual and oculomotor abnormalities, paresthesias, weakness, spasticity, urinary

1

bulges, spurs, chondromalacia of the facet joints, degenerative disc disease, and osteophytes with foraminal stenosis. (*Id*.). Plaintiff alleges he was denied prescribed medical care, medications, treatments, disability-assist devices, and hygienic necessities for his conditions. (*Id*. at 4).

More specifically, he alleges Wellpath engaged an MS specialist, Dr. Atiq, and a neurologist, Dr. Khaleel, to provide treatment for Plaintiff. (*Id*. at 8, 21). Plaintiff indicates he was also supported by the Spinal Cord Commission of Arkansas ("SCC"). (*Id*. at 8). These two specialists and SCC continue to work with Plaintiff. (*Id*.). Plaintiff alleges that Defendants suspended or otherwise disregarded the treatment plans of Drs. Atiq and Khaleel for months at a time over Plaintiff's protests. (*Id*.). These lapses in treatment resulted in Plaintiff suffering "regression and relapse with significant increases in the debilitating symptoms and in pain, at the hands of Wellpath, Daniel and Stieve." (*Id*. at 8-9). Plaintiff also alleges that Defendants also denied him hygienic supplies needed for his condition, resulting in a urinary tract infection.[2] He alleges Defendant Daniels ordered the wheelchair provided to him by SCC be confiscated, resulting in Plaintiff falling, missing meals, and missing medications. (*Id*. at 9). Plaintiff alleges there were many incidents where he was denied care, but he did not wish to try the Court's patience by listing them all. (*Id*.).

Plaintiff alleges the confiscation and the lapses in treatment were financially motivated as well as "vindictive retaliation" in response to his use of the ADC grievance process to protest their denial of medical care. (*Id*. at 9, 51, 55, 73).

---

dysfunction, and mild cognitive symptoms. Typically, neurologic deficits are multiple, with remissions and exacerbations gradually producing disability." https://www.merckmanuals.com/professional/neurologic-disorders/demyelinating-disorders/multiple-sclerosis-ms?query=multiple%20sclerosis. (last accessed Jan. 8, 2020).
[2] "Most patients with MS have difficulty with bladder control (e.g., frequency, urgency, hesitancy, incontinence, retention)." https://www.merckmanuals.com/professional/neurologic-disorders/demyelinating-disorders/multiple-sclerosis-ms?query=Multiple%20Sclerosis. (last accessed Jan. 8, 2020).

Plaintiff also alleges his claims constitute a supplemental state claim for negligence and medical malpractice. (*Id*. at 6).

Plaintiff notes that many of these actions would be actionable under the Americans with Disabilities Act, but he chose not to name the ADC as a Defendant under the Act because it would increase the complexity of the case. (*Id*. at 10).

For the denial of medical care and retaliation claims, Plaintiff proceeds against Defendants in both their official and personal capacity. (*Id*. at 4, 5). For the state claim he proceeds against all Defendants in their personal capacity. (*Id*. at 6). Plaintiff seeks compensatory and punitive damages. He also seeks declaratory and injunctive relief. (*Id*. at 7).

Plaintiff provided copies of 19 ADC grievances with his Complaint, many of which were found to be "with merit" during the grievance process.[3]

- **OR-17-00467** (initial grievance by Plaintiff on March 29, 2017): a nurse did not permit Plaintiff the extra time needed to shower. Found to be with merit. (*Id*. at 12-14).

- **OR-17-01459** (August 24, 2017): Plaintiff grieved that Dr. Stieve altered his pain medication based on medical records alone. The grievance was found to be without merit because Plaintiff did not provide sufficient information. Plaintiff was further advised that, as Regional Medical Director, Dr. Stieve "is authorized to discontinue medications and recommend an alternative treatment plan . . . however the provider at your site can override that decision if he/she does not agree with the alternative treatment plan." (*Id*. at 15-17).

---

[3] The Court notes that several of these were found to be with merit at the initial stage of the grievance, but without merit at the final stage of the grievance because treatment or medication had been provided during the pendency of the grievance. This appears to be a change in language formerly used by the ADC that a grievance was with merit but resolved.

- **OR-17-01460** (August 23, 2017): Plaintiff grieved that Dr. Stieve and Dr. Daniel discontinued Plaintiff's prescribed pain medications. The response indicated several changes of pain medication, including the severance of Tramadol by Stieve on August 22 and the provision of an alternative pain medication to the Tramadol on August 28. The grievance was found to be with merit due to the delay in providing alternative pain medication, but it was considered resolved. (*Id*. at 18-20).

- **OR-17-01851** (October 30, 2017): Plaintiff grieved that he had missed outside appointments necessary for his treatment, including the MS treatment he was to receive every four weeks. He also had not been to see the neurologist. The response indicates that, although there had been delays and reschedules, he had received all ordered appointments. His grievance on this point was therefore without merit. The response further notes he was seen on August 14, 2017 by Dr. Atiq who recommended a follow-up with neurologist Dr. Khaleel due to Plaintiff's increasing symptoms. A neurology consult was entered on August 15, 2019. Because Plaintiff had not yet seen a neurologist at the end of October, his grievance on this issue was found to be with merit. The response also appears to indicate that some of Plaintiff's other treatments could not be authorized until he was seen by the neurologist. (*Id*. at 21-23).

- **OR-17-01956** (November 14, 2017): Plaintiff's MS infusion treatment is to be received every 28 days. His November 13, 2017, appointment was cancelled with no documentation as to why the cancellation occurred. He did not receive the treatment until either December 8th or 11th, 2017. Due to the delay, his grievance

was initially found to be with merit, but then later found to be without merit because he was seen in December. His MS infusions were discontinued, however, until he could be seen by the neurologist again. (*Id*. at 24-26).

- **OR-18-00160** (January 24, 2018): Plaintiff grieved that he had not received his MS infusion and was having relapses. The medical department acknowledged a delay in the treatments but stated he was now being treated. Plaintiff indicated this was an ongoing issue since Daniels arrived, and Daniels told him he was "lucky to be getting anything." The grievance was initially found to be with merit due to the delay, but was then found to be without merit because he had received treatment. (*Id*. at 27-30).

- **OR-18-00172** (January 26, 2018): Plaintiff grieved that Daniel, who is not an MS specialist, had discontinued the medication that had worked for his spasms. He further indicated that Daniel had discontinued or reduced his medications to the point that the MS specialist had characterized Daniel's actions as inhumane. Plaintiff also indicated that Daniel had lied in the records and stated that Plaintiff had asked that medications be discontinued when he had not made such a request. He further states that when he put in sick calls, Daniel told him he was lucky to be getting anything. The merits of this grievance were not reached because Plaintiff had filed the Step One grievance after the 15-day deadline under the ADC grievance policy. (*Id*. at 31-32).

- **OR-18-00572** (April 25, 2018): Plaintiff grieved that he was not permitted to take a shower between April 18 - 23, 2018, and, because has to "use the restroom on himself" he had to smell like urine for five days. Plaintiff also stated that he needed

    a cool shower and the hospital shower will not "go on cold." In his grievance appeal, he stated he had submitted sick calls but was told to clean up in the sink. This issue was not permitted to be raised for the first time on appeal. Plaintiff's original issue was found to be without merit because he had a shower script for Monday, Wednesday, and Friday. (*Id*. at 33-35).

- **OR-18-00584** (May 2, 2018): Plaintiff grieved that he needed a cool shower and that hot water was not indicated for his medical condition.[4] The medical department confirmed that the hospital shower was not working correctly. After Plaintiff's grievance appeal he was permitted to shower in the physical therapy area until the hospital shower was fixed. The grievance was initially found to be with merit, but was then found to be without merit because he was permitted to use an alternative, adjustable shower. (ECF No. 36-38).

- **OR-18-00684** (May 22, 2018): Plaintiff grieved that he needed a script to shower daily and had a rash because he could not. Plaintiff stated his MS specialist had indicated he should shower daily because he uses an "in and out" catheter to deal with his bladder issues, and the lack of shower privileges can cause an infection. In his grievance appeal, Plaintiff stated that he soils himself almost daily and Daniel told him to clean himself in the sink. Plaintiff alleges that doing so will cause him to "get jumped on." He stated he had suffered from a urinary tract infection for over a month. The response notes that Plaintiff was seen by Daniel on May 14, 2018, and he noted that Plaintiff self-catheterizes, has pull-ups, and has access to a

---

[4] "Excess heat (e.g., warm weather, a hot bath, fever) may temporarily exacerbate [MS] symptoms and signs (Uhthoff phenomenon)." https://www.merckmanuals.com/professional/neurologic-disorders/demyelinating-disorders/multiple-sclerosis-ms?query=multiple%20sclerosis.

washcloth and water at all times. He noted no rash on genitals and minimal redness on the left groin. There is no discussion of a urinary tract infection. Daniel denied the need for a daily shower. Based on this examination by Daniel, Plaintiff's grievance was found to be without merit. (ECF No. 39-41).

- **OR-18-00712** (June 2, 2018): Plaintiff grieved that Daniel did not permit a daily shower and told him it was okay to sit around and soil himself. Plaintiff stated this practice had caused him to suffer from urinary tract infections. The merits of this grievance were not reached because Plaintiff filed his grievance later than 15 days after his examination on May 14, 2018. (ECF No. 42-44).

- **OR-18-00828** (July 1, 2018): Plaintiff grieved he was inappropriately charged two co-pays for the treatment of one urinary tract infection. In his appeal, Plaintiff stated he would not have "all of the UTI trouble" if he could clean himself as needed. Plaintiff's grievance was initially found to be with merit; then, after the co-pay was refunded, it was then found to be without merit. (*Id*. at 45-46).

- **OR-18-01469** (November 19, 2018): Plaintiff grieved that Daniel is trying to cause him harm or death with his actions. Specifically, Plaintiff grieved that instead of changing his pill call times, Daniel keeps taking him off all his MS medications and saying that Plaintiff asked him to do so. Plaintiff refutes that he asked him to take him off his medication. The medical department found Plaintiff's grievance to be with merit due to the lack of documentation indicating Plaintiff had requested a cessation of Tysabri infusions. These were restarted. The Response further notes that:

> "You were seen by Dr. Daniel for chronic care on November 2, 2018 at which time he noted you reported not taking your medications due

7

> to the pill call times. You had an active, approved order for Ampyra 10 mg twice daily to be taken at AM and PM pill call. Dr. Daniel discontinued this order and submitted a new order for Ampyra 10 mg twice daily to be taken at the noon and -bed time pill calls. However, the Regional Medical Director discontinued this order noting that studies show a slight increase in walking speed noted with this drug. The Regional Medical Director noted you have an AFO brace; therefore, walking faster may not be safe for you. The Regional Medical Director noted he needed to know more as to why walking more rapidly is needed. Ampyra is a non-formulary medication that requires approval by the Regional Medical Director who is authorized to discontinue medications as he deems medically indicated. A review of your electronic Medication Administration Record indicates you had been prescribed Ampyra since February 2018 and that the Regional Medical Director had approved the previous orders."

(*Id*. at 47). This grievance was found to be with merit and Plaintiff was scheduled for the next available appointment to discuss his Ampyra. (*Id*. at 47-50).

- **OR-18-01529** (December 11, 2018): Plaintiff grieved that Daniel cut his use of urinary catheters in half, requiring Plaintiff to re-use dirty catheters. Plaintiff indicates this reduction in catheters is contradicted by the latest report from his urologist. Plaintiff states he has a urinary tract infection that he cannot get rid of, and re-using dirty catheters "did not help." Plaintiff states Daniel is retaliating against him for filing other grievances about his medical care. In his appeal, Plaintiff states he needs at least eight catheters a day, and there is a report from UAMS confirming this. The merits of this grievance were not reached because Plaintiff filed the grievance past the 15-day deadline. (*Id*. at 51-54).

- **OR-19-00291** (February 27, 2019): Plaintiff grieved that Daniel gave orders for his wheelchair to be taken in retaliation for the multiple complaints Plaintiff had filed against him. Plaintiff states the wheelchair was ordered by his specialist and Daniels went "directly" against that specialist's order. As a result, Plaintiff was not

able to ambulate safely and missed pill call and meals. Plaintiff alleges Daniel is attempting to harm or kill him, and took the wheelchair without doing an exam or any testing to justify the confiscation. The response indicates Plaintiff was seen by Daniel on February 13, 2019, and he determined that there was no medical necessity for the wheelchair. Further, the medication record indicates he received Tramadol on February 15th and 16th. The grievance was found to be without merit. (*Id*. at 55-58).

- **OR-19-00292** (February 26, 2019): Plaintiff grieved that Daniel took away his wheelchair, which he had been prescribed since 2012 due to his MS and had been confirmed as necessary by multiple specialists. The response noted that Plaintiff was seen by Daniel on February 21, 2019, for a urinary tract infection and other issues, and Daniel noted no acute medical need for the wheelchair. The wheelchair was returned to the SCC. The grievance was held to be without merit. (*Id*. at 59-61).

- **OR-19-0023** (March 2, 2019): Plaintiff grieved that Nurse Goldman did not assess him when he fell on February 28, 2019. She told an inmate porter that, "It's only Bramlett." The response indicates a statement was obtained by Goldman indicating medical was called when Plaintiff fell. She noted Plaintiff's complaint of arm and wrist pain and that he stated his knees and legs gave out, and that he was not wearing his brace or specialty shoes because he had not received them back. She spoke with Dr. Vowell, and Plaintiff was permitted to keep his wheelchair until the braces and shoes were returned and Plaintiff could be re-evaluated. Plaintiff grievance was

- found to be without merit because he was seen and treated for his fall. (*Id*. at 62-64).

- **OR-19-00356** (March 22, 2019): Plaintiff grieved that the treatment recommendations of his MS and neurology specialists were not being followed, and he was being denied Gabapentin (pain), Soma (spasms), Ampyra (MS) and Tysabri (MS). This has resulted in excessive pain and increased falls. The merits of this grievance were not reached as it had been filed past the 15-day deadline. (ECF No. 65-68).

- **OR-19-00357** (March 22, 2019): Plaintiff grieved that Daniel continues to deny him Gabapentin and Tramadol for pain. Plaintiff stated that his neurologist, Dr. Khaleel, has repeatedly expressed the need for Gabapentin, but Plaintiff has been denied a long-term pain medication despite having a progressive form of MS. Plaintiff asked that his need be "placed above monetary concerns" and that he be placed on long-term pain medication. The response indicates Plaintiff was placed on Norco post-port-placement and Tramadol was discontinued. Daniel noted that Gabapentin was an off-label use for MS while reviewing Dr. Khaleel's notes. Plaintiff's grievance was found to be without merit. (*Id*. at 69-72).

- OR-19-00358 (March 22, 2019): Plaintiff grieved that he is being retaliated against by medical staff, including Daniel and Stieve. Daniel and Stieve have discontinued medication and denied treatment. Daniel took his wheelchair. The response indicates Plaintiff's wheelchair script was removed because he was seen walking quickly to assault another inmate, therefore, based on clinical data, the wheelchair was determined to be unnecessary. In his appeal, Plaintiff states he had not received

any exams since seeing Dr. Khaleel, who had stated the wheelchair was necessary. Plaintiff was not permitted to bring up this new issue on appeal. The grievance was found to be without merit. (*Id*. at 73-76).

Defendants filed their Partial Motion to Dismiss on July 23, 2019. (ECF Nos. 10, 11). On July 24, 2019, the Court entered an Order directing Plaintiff to respond, and he did so on August 21, 2019. (ECF Nos. 18, 19). Plaintiff also filed his first Motion to Stay Tolling Provisions on August 21, 2019. (ECF No. 20). Plaintiff filed a second Response and Brief in Opposition to the Motion for Dismiss, a second Motion to Stay Tolling Provisions, and a Motion for Order on August 28, 2019. (ECF Nos. 21-25).

Defendants filed a Response in Opposition to Plaintiff's Motion for Order on September 11, 2019, but filed no response to Plaintiff's tolling motions. (ECF No. 26). Plaintiff filed a Motion for Expedited Ruling on January 2, 2020. (ECF No. 27).

## II. LEGAL STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

### III.  ANALYSIS

#### A.  Motion to Dismiss

Defendants argue Plaintiff failed to state a constitutional claim against Wellpath, LLC and failed to state a cognizable retaliation claim against any named Defendant.  (ECF No. 11).

Plaintiff correctly argues that Defendants ignored the contents of the grievances attached to his Complaint, which were included to provide the details for his claims.  (ECF No. 18).  He further argues that Wellpath has a custom of backdating, delaying returns of, or otherwise manipulating medical grievances to prevent corrective action when one of their employees denies necessary care to an inmate.  (ECF No. 19 at 2-3).  Plaintiff attached several grievances to his Response as evidence of this claim, and points out one in which the grievance response apologizes for past due grievance issues and states that management is working on the issue.  (ECF No. 19 at 3).  He notes that the apology is from a regional ombudsman.  (*Id.*).  Plaintiff states he will need discovery to show the culture, customs, and policies of Wellpath which are designed to cause the denial of medical care to inmates.  (*Id.*).

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.  *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978).  "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."  *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."  *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442

12

F.3d 1128, 1132 (8th Cir. 2006)); s*ee also Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994) ("if any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [Plaintiff's] medical care.").

Defendant Wellpath correctly states that Plaintiff has not identified a specific written policy of Wellpath which has deprived Plaintiff of his rights concerning medical care. A written policy, however, is not necessarily required in order to support a claim against Wellpath. A custom conflicting with a written policy can support an official capacity claim. *Johnson v. Douglas County Med. Dept.*, 725 F.3d 825, 829 (8th Cir. 2013). However, to establish the existence of such a custom, Plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and,
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Id.* at 828. Under this standard, "multiple incidents involving a single plaintiff could establish a custom if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials." *Id.*

The Court must liberally construe a *pro se* plaintiff's Complaint. Here, Plaintiff has provided 19 grievances spanning two years which detail Plaintiff's medical care issues with Daniel, a unit physician for Wellpath, and Stieve, the Regional Director for Wellpath. In these grievances, Plaintiff clearly identifies actions that he believes were committed in retaliation for his filing of grievances concerning his medical care. For example, Stieve discontinued a prescribed

MS drug which he had approved in the past, and Daniel confiscated the wheelchair which Plaintiff had been prescribed since 2012. The volume of grievances spanning a two-year period, combined with the involvement of both the Regional Director and the unit physician, permits the inference that Daniel and Stieve, on behalf of and with the tacit authorization of Wellpath, engaged in treatment denials and delays in order to avoid providing Plaintiff necessary medical care for his MS. The Court further notes a pattern wherein many of Plaintiff's grievances were found to be with merit initially, and the care issue was addressed only after the grievance was filed. In his Response, Plaintiff also alleges Wellpath has a custom or practice of backdating or delaying the response to grievances to protect their employees. Plaintiff appears to be well-versed in the ADC grievance process, yet the merits of several of the grievances attached to Plaintiff's Complaint were not addressed because he submitted them past the deadline. Plaintiff has provided sufficient allegations and documentation to raise the reasonable inference that Wellpath customs or practices violated his rights.

For these reasons, it is recommended that Defendants' Partial Motion to Dismiss (ECF No. 10) be DENIED.

### B. Motions to Stay Tolling Provisions of Ark. Code Ann. § 16-114-209(b)(3)(A)

Plaintiff filed two motions referencing Ark. Code Ann. § 16-114-209, which provides that a plaintiff in a medical malpractice claim must show reasonable cause for a complaint in the form of an affidavit signed by an appropriate medical expert indicating that the applicable standard of care had been breached and how the breach resulted in injury or death. Subsection (b)(3)(A) requires that the affidavit be filed within 30 days after the complaint is filed with the clerk of the court, and subsection (b)(3)(B) states that the complaint shall be dismissed if the affidavit is not filed within the 30-day deadline. Plaintiff's motions ask for a stay abrogating the 30-day provision,

or alternatively, to permit Plaintiff to amend his Complaint to challenge the constitutionality of the provision. (ECF Nos. 20 at 2; 24 at 2).

The Arkansas Supreme Court has already struck down the 30-day provision as unconstitutional. *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.2d 415 (Ark. 2007). The affidavit requirement was then replaced in 2015 by an Amendment to Rule 11 of the Arkansas Rules of Civil Procedure allowing an attorney to certify that he or she has consulted with and obtained an opinion from an expert.[5] *Dykes v. Corizon LLC*, Case No. 2:14CV00107 BSM/PSH, 2016 WL 3039634, at *5 (E.D. Ark. Apr. 15, 2016) (citing *In Re Special Task Force on Practice & Procedure in Civ. Cases-Amendments to Ark. R. Civ. P. 11 and 42*), *report and recommendation adopted*, Case No. 2:14CV00107 BSM, 2016 WL 3039736 (E.D. Ark. May 27, 2016); *see also* Ark. R. Civ. P. 11, Addition to Reporter's Notes, 2015 Amendment ("With the adoption of these revisions, section 21 of the Civil Justice Reform Act of 2003, codified at Ark. Code Ann. § 16-114-209, is superseded pursuant to Ark. Code Ann. § 16-11-301. The Supreme Court invalidated a portion of the statute in *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007).").

Accordingly, it is recommended that Plaintiff's Motions to Toll (ECF Nos. 20, 24) be DENIED as MOOT.

### C. Motion for Order and Motion for Expedited Ruling

In his Motion for Order (ECF No. 25), Plaintiff asks for an Order directing the ADC to return law work that was taken, give him time with law books, provide him with help for his case because his MS makes it difficult for him to read and write, and prevent ADC staff from "playing with" his legal mail. Plaintiff also seeks guidance as to what point the Court can appoint him an

---

[5] In reversing a dismissal based on the 30-day requirement after *Summerville*, but prior to the 2015 amendment, the Eighth Circuit indicated that it saw no reason that a Plaintiff would be precluded from providing an affidavit in compliance with § 16–114–209(b)(1) and (2) while discovery in a case was ongoing. *Newton v. Clinical Ref. Laboratory, Inc.*, 517 F.3d 554, 557 (8th Cir. 2008).

attorney. (ECF No. 25 at 1). In his Motion for Expedited Ruling, Plaintiff concedes that his Motion for Order was "ill-considered" and the product of a pro-se claimant. (ECF No. 27 at 1-2). He asks that his Motion for Order be dismissed. (*Id*. at 2). He further asks that the Court expedite the ruling on the Motion to Dismiss, as he continues to suffer denials and lapses of medical care. (*Id*. at 1).

In their Response to his Motion for Order, Defendants first note that there are no ADC defendants in this case. (ECF No. 26 at 1). They next argue that, to the extent Plaintiff has asked for a preliminary injunction, he has presented no factual or legal basis for the Court to grant his motion and his claims are not related to the claims raised in his Complaint. (*Id*. at 1-4). Finally, they argue that Plaintiff is clearly capable of presenting his claims in this case without appointed counsel. (*Id*. at 4).

Defendants are correct. Plaintiff's case has been brought against Wellpath and their employees, and he has not addressed any of the factors necessary to meet his burden in requesting a preliminary injunction. *See Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) ("The burden of proving that a preliminary injunction should be issued rests entirely with the movant."). Further, it is not the role of this Court to second-guess the judgment of prison administrators on issues of prison management unless a facially valid constitutional claim is raised. *Iron Eyes v. Henry*, 907 F.2d 810, 812 (8th Cir. 1990) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

Plaintiff has also requested the appointment of counsel. A civil litigant does not have a constitutional or statutory right to appointed counsel in a civil action, but the Court may appoint counsel at its discretion. 28 U.S.C. 1915(e)(1). The Court has considered the need for an attorney, the likelihood that Plaintiff will benefit from assistance of counsel, the factual and legal complexity of the case, and whether Plaintiff has the ability to investigate and present this case. In considering

these factors, the Court finds that the claims do not appear legally or factually complex, and Plaintiff is adequately prosecuting this case at this time. The Court finds Plaintiff is capable of prosecuting his claims without appointed counsel. At a later stage in the case, Plaintiff may again request appointment of counsel if Plaintiff believes the circumstances justify such an appointment.

It is recommended that Plaintiff's Motion for Order (ECF No. 25) be DENIED. Plaintiff's Motion for Expedited Ruling (ECF No. 27) should be DENIED as MOOT.

### IV. CONCLUSION

Accordingly, it is recommended that:

Defendants' Partial Motion to Dismiss (ECF No. 10) be DENIED;

Plaintiff's Motions to Stay Tolling Provisions of Ark. Code Ann. § 16-114-201, et seq. (ECF Nos. 20, 24) be DENIED;

Plaintiff's Motion for Order (ECF No. 25) be DENIED; and,

Plaintiff's Motion for Expedited Ruling (ECF No. 27) be DENIED.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of January 2020.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE