IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JASON WILLARD BRAMLETT                                                    PLAINTIFF

v.                                    Civil No. 6:19-CV-06070

WELLPATH LLC, *et. al.*                                                  DEFENDANTS

## ORDER

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff

proceeds *pro se* and *in forma pauperis.* Currently before the Court is Plaintiff's Motion to Compel.

(ECF No. 39).

Plaintiff's Complaint alleges he is being denied prescribed medical care, medications,

treatments, disability-assist devices, and hygienic necessities for his conditions, including multiple

sclerosis ("MS"). (ECF No. 1). Plaintiff filed his Motion to Compel on June 29, 2020. (ECF No.

39). Plaintiff identifies several items requested in discovery, but not provided by Defendants due

to discovery objections. Plaintiff alleges he has conferred with Defendants in an attempt to resolve

the dispute. (*Id*. at 1). Plaintiff asks the Court to compel Defendants to produce the following:

> 1. Any ADC health policy which may have, or did, influence or cause to exist treatment decisions as applied to Plaintiff, beyond those already disclosed. (As sought in Production Request #2)
>
> 2. Any corporate policies which had any impact upon treatment decisions concerning the Plaintiff, especially those concerned with the cost thereof. (As sought by Request #4)
>
> 3. Plaintiff's COMPLETE medical record, regarding ALL facets thereof. (As sought by Request #4)

4.   All other documents concerning the Plaintiff's healthcare, or pertaining to grievances, concerned thereof composed by or received by any Wellpath employee in any form.  (As sought by Request # 5 and #6)[1]

5.   A list of lawsuits filed by incarcerated persons naming CCS, Wellpath, Dr. Stieve or Dr. Daniel that has gone to trial, been settled or still proceeding (if not frivolous, i.e. surviving initial review and Motion to dismiss) from March 1st 2017 until the present (As requested in Request #8).

6.   Any citations, reprimands, notices or other actions taken by State licensure boards, agencies or other public entities against Wellpath (CCS), Dr. Stieve or Dr. Daniel, as well as any other corrective action and whether completed or ongoing in the prior 5 years.

(*Id.* at 1-2).

Defendants filed their Response to the motion on July 15, 2020, and stand by the objections provided to Plaintiff.  (ECF No. 47).  Regarding Plaintiff's policy requests, they state that medical treatment decisions are based on medical judgment, not policies.  (*Id.* at 1).  Regarding Plaintiff's request for his medical records, they state that ADC security policy prohibits inmates from having possession of their medical records.  Instead, inmates are free to review their records upon request, and Defendants have contacted the Health Services Administrator, informed the administrator of this case, and asked that Plaintiff be given liberal and frequent reviews of his medical records.  (*Id.* at 1-2, 47-1).  They further state that Plaintiff has not contacted Defendants' counsel regarding any problems with access to his medical records.  (*Id.* at 2).

Defendants have "no response" to the request for grievances and other documents, other than to state that Plaintiff has been provided copies of all grievance documents.  (*Id.* at 2-3). Regarding Plaintiff's request for a list of lawsuits, Defendants state that this document does not exist, would need to be created, and would require hundreds of hours to create.  Further, the

---

[1] In his discovery documents, Plaintiff asks for email or other messages sent inside EOMIS from or to Dr. Stieve and Dr. Daniel concerning Plaintiff's medical care, including communications with ADC personnel regarding grievances.

Defendants' litigation history has no bearing on whether Defendants were deliberately indifferent to Plaintiff's medical care.  (*Id.* at 3).  Regarding Plaintiff's request for citations or other disciplinary documents, Defendant state that, assuming these documents from "various and unidentified entities" would not be privileged and protected by quality control management, the request has no bearing on Plaintiff's medical care for his MS.  (*Id.* at 3).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ."  Fed. R. Civ. P. 26(b)(1).  Courts construe that grant "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340, 352 (1978).  While the scope of relevant discovery is broad, however, "this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery."  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

Defendants' objections to Plaintiff's requests are appropriate.  ADC policy 800.00, provided to both Plaintiff and the Court, clearly states that inmates may not possess copies of their medical records.  Plaintiff is encouraged to take advantage of the more liberal viewing opportunities provided to him for this case.

Plaintiff asks for all communications to and from his physicians, including any communication with ADC personnel regarding grievances.  Defendants have given Plaintiff all grievance documents.  In their discovery response to this question, they also state that they are not aware of any email or other messages send inside EOMIS concerning Plaintiff's medical care. (ECF No. 39-2 at 6).  Plaintiff was further informed that Defendants Daniel and Stieve do not recall communicating by text or email about his case, and Defendant Daniel did not see anything related to Plaintiff upon a brief review of his communications with Defendant Stieve.  (ECF No.

39-2 at 1).   Rule 34 provides for the production documents and things within "the responding party's possession, custody or control."  Fed. R. Civ. P. 34 (a)(1).  Defendants cannot produce what does not exist.

Plaintiff alleges that the cost of his MS treatment was a factor in the decision to stop the treatment.   To the extent his requests for ADC and corporate policies could be relevant to his claims, as propounded they are overbroad, not proportional to the case, and not narrowly tailored to address the issues in his case as required by the Fed. R. Civ. P. 26(b)(1).  *See e.g. Sabata v. Nebraska Dept. of Correctional Services*, 4:17CV3107, 2020 WL 2201873, at *2 (D. Neb. May 1, 2020), *objections overruled*, 4:17-CV-3107, 2020 WL 3047479 (D. Neb. June 8, 2020) (inmates' emergency request for the prison's COVID-19 policy not relevant to their underlying claim for constitutionally deficient health care).

Plaintiff's requests for disciplinary documents from unidentified agencies or entities and a litigation list are clearly a fishing expedition.  As propounded, they do not appear "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc.*, 437 U.S. at 351.  Further, documents created by counsel in anticipation of litigation are generally not discoverable pursuant to 26(b)(3).

IT IS SO ORDERED this 29th day of July 2020.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE